UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| | | | |
|---|---|---|---|
| Case No. | CV 17-7033-GW(MRWx) | Date | June 26, 2018 |
| Title | *Bragel International, Inc. v. Charlotte Russe, Inc., et al.* | | |

Present: The Honorable   GEORGE H. WU, UNITED STATES DISTRICT JUDGE

| Javier Gonzalez | None Present | |
|---|---|---|
| Deputy Clerk | Court Reporter / Recorder | Tape No. |

| Attorneys Present for Plaintiffs: | Attorneys Present for Defendants: |
|---|---|
| None Present | None Present |

**PROCEEDINGS:**   **IN CHAMBERS - FINAL RULING *MARKMAN* HEARING**


Attached hereto is the Court's Final Ruling on *Markman* Claims Construction.

The Court sets a scheduling conference for July 5, 2018 at 8:30 a.m. Parties may appear telephonically provided advanced notice is given to the clerk.

                                                                           : 

Initials of Preparer   JG

*Bragel International, Inc. v. Charlotte Russe, Inc. et al*; Case No. LA CV17-07033-GW-(MRWx)
Final Ruling on *Markman* Claims Construction

# I. INTRODUCTION

Plaintiff Bragel International, Inc. ("Bragel" or "Plaintiff") accuses Defendants Charlotte Russe, Inc., Charlotte Russe Merchandising, Inc., and Charlotte Russe Administration, Inc. (collectively, "Charlotte Russe" or "Defendants") of infringing U.S. Patent No. 6,780,081 ("the '081 Patent"). Docket No. 1. Defendants, in turn, have alleged non-infringement and invalidity of the '081 Patent. *See* Docket No. 24 (Defendant's Counterclaim). The '081 Patent issued on August 24, 2004 and generally relates to a backless, strapless bra. *See* '081 Patent at 1:5-8.

The parties submitted a revised Joint Claim Construction Chart on May 17, 2018 seeking construction of seven claim terms. Docket No. 36. On June 1, 2018, the parties filed opening briefs in support of their claim construction positions. *See* Docket No. 38 (Plaintiff's Opening Claim Construction Brief); Docket No. 37 (Defendants' Opening Claim Construction Brief). The parties filed responsive briefs on June 12, 2018. *See* Docket No. 40 (Plaintiff's Responsive Claim Construction Brief); Docket No. 39 (Defendants' Responsive Claim Construction Brief).

The Court would construe the disputed terms as set forth herein.

# II. LEGAL STANDARD

Claim construction is an interpretive issue "exclusively within the province of the court." *Markman v. Westview Instruments, Inc.*, 517 U.S. 370, 372 (1996). It is "a question of law in the way that we treat document construction as a question of law," with subsidiary fact-finding reviewed for clear error pursuant to Fed. R. Civ. P. 52(a)(6). *Teva Pharms. USA, Inc. v. Sandoz, Inc.*, 135 S.Ct. 831, 837-40 (2015). The claim language itself is the best guide to the meaning of a claim term. *See Vederi, LLC v. Google, Inc.*, 744 F.3d 1376, 1382 (Fed. Cir. 2014). This is because the claims define the scope of the claimed invention. *Phillips v. AWH Corp.*, 415 F.3d 1303, 1312 (Fed. Cir. 2005). But a "person of ordinary skill in the art is deemed to read the claim term not only in the context of the particular claim in which the disputed term appears, but in the context of the entire patent." *Id.* at 1313. Thus, claims "must be read in view of the specification," which is "always highly relevant to the claim construction analysis." *Phillips*, 415 F.3d at 1315 (internal quotations omitted).

Although claims are read in light of the specification, limitations from the specification must not be imported into the claims. *Abbott Labs. v. Sandoz, Inc.*, 566 F.3d 1282, 1288 (Fed. Cir. 2009). "[T]he line between construing terms and importing limitations can be discerned with reasonable certainty and predictability if the court's focus remains on understanding how a person of ordinary skill in the art would understand the claim terms." *Phillips*, 415 F.3d at 1323.

The prosecution history may lack the clarity of the specification, but it is "another established source of intrinsic evidence." *Vederi*, 744 F.3d at 1382. "Like the specification, the prosecution history provides evidence of how the PTO and the inventor understood the patent." *Phillips*, 415 F.3d at 1317 (citations omitted). "Furthermore, like the specification, the prosecution history was created by the patentee in attempting to explain and obtain the patent." *Id.* "Yet because the prosecution history represents an ongoing negotiation between the PTO and the applicant, rather than the final product of that negotiation, it often lacks the clarity of the specification and thus is less useful for claim construction purposes." *Id.*

Claim construction usually involves resolving disputes about the "ordinary and customary meaning" that the words of the claim would have had "to a person of ordinary skill in the art in question at the time of the invention." *Phillips*, 415 F.3d at 1312-13 (internal quotations and citations omitted). But in some cases, claim terms will not be given their ordinary meaning because the specification defines the term to mean something else. "[A] claim term may be clearly redefined without an explicit statement of redefinition," so long as a person of skill in the art can ascertain the definition by a reading of the patent documents. *Id.* at 1320; *see also Trustees of Columbia Univ. in City of New York v. Symantec Corp.*, 811 F.3d 1359, 1364 (Fed. Cir. 2016).

Where the patent itself does not make clear the meaning of a claim term, courts may look to "those sources available to the public that show what a person of skill in the art would have understood disputed claim language to mean," including the prosecution history and "extrinsic evidence concerning relevant scientific principles, the meaning of technical terms, and the state of the art." *Phillips*, 415 F.3d at 1314 (internal quotations omitted). Sometimes, the use of "technical words or phrases not commonly understood" may give rise to a factual dispute, the determination of which will precede the ultimate legal question of the significance of the facts to the construction "in the context of the specific patent claim under review." *Teva*, 135 S. Ct. at 841, 849. "In some cases, the ordinary meaning of claim language as understood by a person of

skill in the art may be readily apparent even to lay judges, and claim construction in such cases involves little more than the application of the widely accepted meaning of commonly understood words." *Phillips*, 415 F.3d at 1314. "In such circumstances, general purpose dictionaries may be helpful." *Id.*

### III. ANALYSIS

A. *"Thermoplastic film material" (Claims 1, 2) and "pressure sensitive adhesive layer" (Claims 1, 11, and 12)*

| Term | Plaintiff's Proposed Construction | Defendants' Proposed Construction |
|---|---|---|
| "thermoplastic film material" (Claims 1, 2) | Plain and ordinary meaning<br><br>Original alternative construction: "any sheet of material comprising of thermoplastic (capable of softening or fusing when heated and of hardening again when cooled)"[1] | "a sheet of non-fabric plastic film comprising at least part of the bra cup, that can be adjoined to a variety of different fabrics or other materials of the bra cup, including the separate pressure sensitive adhesive layer disposed on the interior surface of the bra cup" |
| "pressure sensitive adhesive layer" (Claims 1, 11, 12) | "a layer of any type of pressure sensitive adhesive that is suitable for removably attaching a breast form to a user's skin" | "a layer of any type of pressure sensitive adhesive that is suitable for removably attaching a breast form to a user's skin" |

The core dispute permeating the parties' claim construction briefs relates to whether the "thermoplastic film material" recited in the '081 Patent claims must be a separate "structure" from the claimed "pressure sensitive adhesive layer." The Court will thus construe these terms together. The parties' also dispute what materials can constitute the "thermoplastic film material" and "pressure sensitive adhesive layer."

a) *Whether the Two Claim Terms Relate to Separate Components*

Both terms appear in Claim 1, which states,

1. An improved backless, strapless bra comprising:
a pair of bra cups, wherein each bra cup comprises:

---

[1] In the parties' Joint Claim Construction Chart, for almost all of the disputed claim terms, Plaintiff proposed alternative constructions that allegedly reflect the term's plain and ordinary meaning. As Defendants observe (*see* Docket 39 at 1), however, in Plaintiff's opening claim construction brief, Plaintiff does not maintain these alternative constructions in its claim construction charts. Plaintiff simply references them in its analysis. The Court includes these alternative proposed constructions in its Order for completeness. However, as will be further explained herein, they do not impact the Court's final determinations regarding the meanings of the disputed terms.

3

> a concave interior surface, the interior surface facing towards a user's breast, and an exterior surface facing opposite the interior surface, wherein substantially the entire interior surface from edge to edge comprises *a pressure sensitive adhesive layer* disposed thereon for adjoining the bra cup to the user's breast;
> a *thermoplastic film material supporting the pressure sensitive adhesive layer*;
> an outer side facing towards the user's armpit, and an inner side facing opposite the outer side, wherein the bra cup is secured to the user's breast solely by the *pressure sensitive adhesive layer*; and
> a connector adapted to adjoin the bra cups, wherein the connector is positioned between the inner sides of each of the bra cups.

'081 Patent, Claim 1 (emphasis added). The terms also appear in some of the dependent claims:

> 2. The bra of claim 1 wherein the *thermoplastic film material* defines the interior surface.
>
> \*               \*               \*
>
> 11. The bra of claim 1 wherein the *pressure sensitive adhesive layer* has an adhesion force to the interior surface of the bra cups that is greater than a cohesion force to the user's skin.
>
> 12. The bra of claim 11 wherein the *pressure sensitive adhesive layer* is permanently grown to the interior surface of the bra cups.

*Id.* at Claims 2, 11, and 12 (emphasis added).

The separate use of the terms "thermoplastic film material" and "pressure sensitive adhesive layer" in the claims suggests that they relate to different components. *See Ethicon Endo-Surgery, Inc. v. U.S. Surgical Corp.*, 93 F.3d 1572, 1579 (Fed. Cir. 1996) ("If the terms 'pusher assembly' and 'pusher bar' described a single element, one would expect the claim to consistently refer to this element as *either* a 'pusher bar' or a 'pusher assembly,' but not both, especially not within the same clause."). Indeed, like *Ethicon*, the terms are used in the same limitation of Claim 1 where it states, "a thermoplastic film material supporting the pressure sensitive adhesive layer." Contrary to Plaintiff's argument, construing these two terms to relate to a single component would render this claim limitation redundant and possibly nonsensical (like using multiple words for "table" to explain that a table supports itself). Claim 1 also describes the "pressure sensitive adhesive layer" as "*disposed*" on the "interior surface" of the claimed bra cups. In dependent Claim 2, in comparison, the thermoplastic film material is described as "*defin[ing]* the interior surface" of the bra cups. The parties do not request

4

construction of the phrase "define the interior surface" in Claim 2, but the ordinary understanding of Claim 1 in combination with Claim 2 suggest that the thermoplastic film material is considered part of the interior surface on which the pressure sensitive adhesive layer is disposed.

The patent specification also supports the conclusion that the thermoplastic film material is a separate component from the pressure sensitive adhesive layer. For instance, in the Summary of the Invention section of the '081 Patent, it states,

> [t]he present invention . . . comprises a pressure sensitive adhesive layer for adjoining the bra cups to the user's skin. The pressure sensitive adhesive layer is adjoined to a PSA supporting layer, which can be formed from a variety of different types of films or fabrics.

'081 Patent at 2:12-17. It further states, "the preferred pressure sensitive adhesive is permanently grown to a thermoplastic film that comprises a portion of the interior surface of the bra cups." *Id.* at 2:29-31. Both of these disclosures treat the "supporting layer," *e.g.*, the "thermoplastic film material," as a separate component in relation to the pressure sensitive adhesive layer.

The '081 Patent further explains, "[i]n the embodiment shown, the pressure sensitive adhesive layer can be permanently grown *to* the thermoplastic film material, from edge to edge or applied by the other methods discussed." *Id.* at 4:7-10 (emphasis added); *see also id.* at 3:27-31 (explaining in the context of applying the pressure sensitive adhesive layer to the interior surface of the bra cups that the layer can also be applied "by other methods such as spray coating, hot melting, extrusion application, die application, or other methods known for applying a PSA to a substrate."). The '081 Patent then states, "[i]t is understood that the amount of pressure sensitive adhesive *covering the interior surface* of the bra cups and the amount of the thermoplastic film material *forming the interior surface* can vary depending on the desired design and function of the bra cups." *Id.* at 4:10-14. Again, this disclosure supports the conclusion that the components are distinct and that the thermoplastic film material is part of the interior surface, while the pressure sensitive adhesive layer covers that surface.

To the extent Plaintiff's argument is that the pressure sensitive adhesive layer and the thermoplastic film material can be the same *component*, it is not supported by the intrinsic record. However, Plaintiff also seems to argue that the two components can intermingle into the same *structure*, particularly where the pressure sensitive adhesive layer is permanently grown to

the thermoplastic film material. Plaintiff relies on Figures 3a and 3b to support its position. *See* Docket No. 38 at 10-12. Figures 3a and 3b appear to identify both the pressure sensitive adhesive layer (labeled 33) and the thermoplastic film material (labeled 34) by pointing to the same parts of the figures:



'081 Patent, Figs. 3a, 3b. Figures 3a and 3b are hand-drawn and the Court doubts their exact accuracy. Moreover, at a close inspection, it appears that the pressure sensitive adhesive layer 33 is identified as the very edge of the interior surface 30, while the thermoplastic film material 34 is identified somewhere in the middle of the shaded area. Indeed, even Plaintiff notes in its annotations that it understands the "pressure sensitive adhesive layer is a ***surface*** of thermoplastic film material." Docket No. 38 at 11.

     Plaintiff pontificates that, because in discussing Figures 3a and 3b the specification refers to the thermoplastic film material 34 as the "layer nearest the user that defines the interior surface **30**" and the pressure sensitive adhesive layer 33 as "covering the interior surface of the bra cups," the thermoplastic film material must be the same as the pressure sensitive adhesive layer. *See* '081 Patent at 4:10-12, 4:24-26; *id.* at 12-13. Notably, these phrases state: "layer nearest the user ***that defines the interior surface***" and "***covering*** the interior surface." Indeed,

6

the patent goes on to recite:

> The bras shown in FIGS. 3a and 3b include the entire interior surface having the thermoplastic film material and the pressure sensitive adhesive layer, but various partial configurations and designs can be achieved. It is understood that *the interior surface can be formed from* a number of other materials besides a thermoplastic film material. The interior surface of the bra cups serves as a pressure sensitive adhesive <u>support</u> layer. The *interior surface can be formed from any type of film material or fabric material <u>suitable for adjoining</u> to a PSA*.

'081 Patent at 4:27-36 (emphasis added). In other words, the patent again distinguishes the "interior surface" and the pressure sensitive adhesive layer adjoining the interior surface. Although the '081 Patent refers to the thermoplastic film material as potentially "nearest the user," it does so in the context of understanding the thermoplastic film material as part of the interior surface. *Id.* at 4:24-26. This understanding is consistent with the conclusion that the pressure sensitive adhesive layer is separate from the interior surface and indeed the pressure sensitive adhesive is still adjoined over the interior surface.

Plaintiff also argues that Figures 3a and 3b depict an embodiment where the pressure sensitive adhesive layer is permanently grown. Plaintiff states that when the two components are "'permanently grown', with the introduction of heat to soften, fuse and harden again," there is a change in "the density between the molecules to form one structure." *See* Docket No. 38 at 12. Unfortunately, Plaintiff does not provide any citation for this assertion. Also tellingly, the parties submitted competing proposed constructions for the term "permanently grown to the interior surface." There, Plaintiff had a prime opportunity to explain what the term "permanently grown" means and how it might inform the meaning of the terms "thermoplastic film material" and "pressure sensitive adhesive layer." Instead, Plaintiff did not propose a construction and in explaining its position, referred to its same, unsupported sentence about "the introduction of heat to soft, fuse, and harden" to "change[] the density between the molecules to form one structure." *Id.* at 26.

The Court acknowledges Plaintiff's (unsupported) argument that where the patent describes a pressure sensitive adhesive layer "permanently grown" to the interior surface, there may be some molecular reaction that leads to more permanent binding of the two interacting materials. The Court further acknowledges that such an embodiment would result in one combined structure which is composed of the thermoplastic film material and pressure sensitive

7

adhesive and performs the two respective functions of those materials, including providing for support and adhesion. But the two separate component materials must be present as a starting point to satisfy the claim language. Arguing that a sole starting material could satisfy the requirements and do the work of both the claimed pressure sensitive adhesive layer and the thermoplastic film material would be contrary to the plain meaning of the claims and specification.

At the hearing, Plaintiff discussed for the first time an "indirect attachment" embodiment wherein the thermoplastic film material and the pressure sensitive adhesive layer are separated by additional layers. The intrinsic evidence supports the disclosure of such an embodiment wherein the thermoplastic film material and the pressure sensitive adhesive layer are not directly adjacent layers. *See* '081 Patent at 3:61-64 ("Adjoined to the plastic film material can be a variety of different types of fabrics or other materials, such as foams and the like."); '081 Patent at 4:18-20 ("It should be understood that the bra cup can include a variety of combinations of fabrics and materials that can form different layers of the bra cup."). Still, an "indirect attachment" embodiment is consistent with the conclusion that two separate component materials must be present as a starting point to satisfy the claim language and that the components are distinct and form separate structures.

The prosecution history also supports the intrinsic evidence and the conclusion that the "thermoplastic film material" is a separate component from the "pressure sensitive adhesive layer." The prosecution history reveals that the patent applicant added the phrase "thermoplastic film material supporting the pressure sensitive adhesive layer" to Claim 1 in response to the examiner's § 102 and § 103 rejections. Docket No. 37-3 at 147. In responding to the examiner's rejections, the applicant also stated:

> There are at least ***two structural*** limitations recited in claim 1, as amended, that are not disclosed by Noble et al.: (1) "substantially the entire interior surface comprises a pressure sensitive adhesive layer disposed thereon for adjoining the bra cup to the user's breast"; and (2) ***"a thermoplastic film material supporting the pressure sensitive adhesive layer."***

*Id.* (emphasis added).

Plaintiff acknowledges the addition of the "thermoplastic film material" element to Claim 1 during prosecution, but argues that the amendment did not necessarily require two separate structures and the additional language only discloses the *position* of the thermoplastic film

8

material – in a location supporting the pressure sensitive adhesive layer. *See* Docket No. 38 at 18; Docket No. 40 at 12. Although, as noted, the Court acknowledges that the thermoplastic film material and pressure sensitive adhesive layer may become integrated in certain embodiments, the applicant specifically refers to: (1) the pressure sensitive adhesive layer and (2) the thermoplastic film material as "at least two structural limitations." Docket No. 37-3 at 147. The applicant's statements inform the understanding of the phrases and is consistent with the disclosure in the specification and claims showing that the thermoplastic film material and pressure sensitive adhesive layer must be separate components of the claimed invention.

In the same breath, Plaintiff relies on statements made by the examiner in an interview summary to support its position and criticizes Defendants for relying on statements made by the examiner in the notice of allowance to support their position. Docket No. 40 at 13-15. Plaintiff's cited statements, however, related to the examiner's observations about a sample submitted by the applicant, not the claim language itself. *See* Docket No. 37-3 at 234. In comparison, when discussing the claims in the notice of allowance, the examiner stated:

> [n]one of the cited references, alone or in combination, disclose the backless, strapless bra with cups which include a concave interior surface having ***a film layer which supports a pressure sensitive adhesive disposed substantially from edge to edge on the interior surface of the film layer*** in addition to a connector between the cups as claims in claim 1.

*See Id.* at 238-39 (emphasis added). Overall, the prosecution history, including both the applicant's and examiner's statements, supports the intrinsic evidence and the conclusion that the thermoplastic film material is a distinct structure.[2] *See Salazar v. Procter & Gamble Co.*, 414 F.3d 1342, 1347 (Fed. Cir. 2005) ("Statements about a claim term made by an examiner during prosecution of an application may be evidence of how one of skill in the art understood the term at the time the application was filed.").

      b)     *Types of Materials Covered by the Claim Terms and Their Properties*

The parties also present a separate dispute regarding the types of materials that can

---

[2] At the hearing, the parties further reiterated their dispute about the details of the prosecution history. In particular, Plaintiff urged that other language in one of the applicant's office action responses showed that the applicant was simply distinguishing the prior art on the basis of the positioning of the thermoplastic film material relative to the other aspects of the bra cup. The Court is not persuaded by Plaintiff's arguments, which still suggest the thermoplastic film material is a separate component from the pressure sensitive adhesive layer. Moreover, the Court is not using the prosecution history to determine whether the applicant disclaimed the subject matter or the scope of the claim terms. Rather, here, the prosecution history is further evidence consistent with the rest of the intrinsic record of how the PTO and the inventor understood the patent.

constitute the thermoplastic film material and the pressure sensitive adhesive layer. Defendants' proposed construction limits the thermoplastic film material to a "non-fabric plastic film." It is not clear why Defendants depart from the language of the specification regarding the term "thermoplastic" for this aspect of their proposed construction. The specification, which Defendants cite, states, "[t]he thermoplastic film material can be ***any type of plastic or polymer that is suitable for heat lamination***, such as polyurethane or the like." '081 Patent at 4:3-5 (emphasis added).

Plaintiff submits three dictionary definitions regarding the meaning of the term "thermoplastic." Docket No. 38 at 8. The first is a website printout from 2018 defining "thermoplastic" as "capable of softening or fusing when heated and of hardening again when cooled." *Merriam-Webster's Collegiate Dictionary*, 11th Ed. (2018), webpage for "thermoplastic (adj.)," Dkt. 33-2 at 2. The second is a "Dictionary of Fiber & Textile Technology," 7th Edition, defining the term as "a plastic material that is permanently fusible. The term as applied to manufactured fibers describes their tendency to soften at higher temperatures." *Id.* at 3-4. The final definition is from "Fairchild's Dictionary of Textiles," 7th Edition, which refers to "thermoplastic" as "[r]eversible softening at high temperatures. Applies to many resins and textile fibers."[3] *Id.* at 6-8. Considered in conjunction with the intrinsic record, contrary to Plaintiff's objections, these definitions, particularly the second definition, support the patent's disclosure of a "thermoplastic film material" as a plastic or polymer material. Moreover, neither party appears to dispute that a thermoplastic material, as understood in the context of the patent and supported by the extrinsic evidence, is a material that can be heated to soften it so that it can bind (or fuse) to other materials.

In their Responsive Claim Construction Brief, Defendants argue that the pressure sensitive adhesive layer must similarly be limited to a non-fabric material. Docket No. 39 at 12. However, Defendants' cited portion of the '081 Patent refers back to the composition of the thermoplastic film material, not the pressure sensitive adhesive layer. *See id.* (citing '081 Patent at 4:3-5). Defendants provide no other basis for limiting the meaning of the pressure sensitive adhesive layer, and the Court declines to limit the meaning of the term.[4]

---

[3] Although Plaintiff does not submit the bibliographic data for the second and third references, they appear to have been first published in 1999 and 1996, respectively.

[4] Although both parties agreed in their briefs that the specification and claims do not preclude certain embodiments

*c)* *Conclusion*

As noted, the specification describes the thermoplastic film material as "any type of plastic or polymer that is suitable for heat lamination." '081 Patent at 4:3-4. The phrase "heat lamination," however, is not a term that every lay juror will readily know and understand. But also as noted, the parties do not appear to dispute that the term "thermoplastic" is defined in dictionaries as referring to a material capable of "reversible softening" or "softening or fusing when heated and hardening again when cooled." *See* Docket No. 37 at 9; Docket No. 38 at 8.

In addition, in order to clarify that the "thermoplastic film material" is a separate component from the "pressure sensitive adhesive layer," the Court construes the term "thermoplastic film material" to reflect that it is a part of the interior surface of the bra cup, rather than disposed on the interior surface of the bra cup like the pressure sensitive adhesive layer. This understanding is supported by the intrinsic record. '081 Patent, Claim 1, Claim 2; *see also* '081 Patent at 2:29-31 ("the preferred pressure sensitive adhesive is permanently grown to a thermoplastic film that ***comprises a portion of the interior surface*** of the bra cups") (emphasis added); *Id.* at 4:12-14 ("the amount of thermoplastic film material ***forming the interior surface*** can vary depending on the desired design and function of the bra cups") (emphasis added); *Id.* at 4:24-26 ("the thermoplastic film material 34 will be the layer nearest the user that ***defines the interior surface***") (emphasis added).

Accordingly, the Court construes the term "thermoplastic film material" as "a plastic or polymer material that is part of the interior surface of the bra cup and is capable of softening or fusing when heated and hardening again when cooled."[5]

Although the parties each submit the same proposed construction for the term "pressure sensitive adhesive layer," the Court finds this construction redundant of the claim language. Claim 1 already teaches that "the bra cup is secured to the user's breast solely by the pressure

---

where the pressure sensitive adhesive layer is made of a thermoplastic material (*see* Docket No. 38 at 19; Docket No. 39 at 11), at the hearing, the parties suggested otherwise. The Court finds no intrinsic evidence suggesting that the material of the pressure sensitive adhesive layer may not also be thermoplastic. In addition, contrary to what the Plaintiff suggests, such an embodiment does not mean that the pressure sensitive adhesive layer and the thermoplastic film material as claimed may be a single component.

[5] At the hearing, Defendants asked the Court to revise its tentative construction to add an explicit disclosure that the thermoplastic film material and the pressure sensitive adhesive layer are separate components. Defendants' request is already reflected in the Court's construction, which clarifies that the thermoplastic film material is "part of the interior surface of the bra cup." Moreover, Defendants' proposed additional language is redundant of the claim language itself, which already separately teaches a thermoplastic film material ***and*** a pressure sensitive adhesive layer.

sensitive adhesive layer." The Court thus concludes that no construction is necessary for the term "pressure sensitive adhesive layer."

  B. *Remaining Disputed Terms ("supporting" (Claim 1); "pressure sensitive adhesive layer" (Claims 1, 11, 12); "adhesion force" (Claim 11); "cohesion force" (Claim 11); "greater than a cohesion force to the user's skin" (Claim 11); "permanently grown to the interior surface" (Claim 12))*

| Term | Plaintiff's Proposed Construction | Defendants' Proposed Construction |
|---|---|---|
| "supporting" (Claim 1) | Plain and ordinary meaning<br><br>Original alternative construction: "to bear or hold up" | "to bear or hold up; serve as a foundation for" |
| "adhesion force" (Claim 11) | Plain and ordinary meaning<br><br>Original alternative construction: "force attributed to the adhesion of the pressure sensitive adhesive layer to the bra cup" | "the force attributed to the adhesion of the pressure sensitive adhesive layer to the thermoplastic film material supporting it" |
| "cohesion force" (Claim 11) | Plain and ordinary meaning<br><br>Original alternative construction: "the force attributed to the cohesion of the pressure sensitive adhesive layer to the user's breast" | "the force attributed to the cohesion of the pressure sensitive adhesive layer to the breast, thereby holding the bra in place on the user's breasts" |
| "greater than a cohesion force to the user's skin" (Claim 11) | Plain and ordinary meaning<br><br>Original alternative construction: "the force adhering the pressure sensitive adhesive layer to the bra cup is stronger than the cohesion force of the pressure sensitive adhesive layer to the user's breast" | "the force adhering the pressure sensitive adhesive layer to the thermoplastic film material supporting it is stronger than the cohesion force of the pressure sensitive adhesive layer to the user's skin" |
| "permanently grown to the interior surface" (Claim 12) | Plain and ordinary meaning<br><br>Original alternative construction: "the pressure sensitive adhesive layer is adjoined to the interior surface permanently" | "the pressure sensitive adhesive layer is affixed to the thermoplastic film material supporting it permanently" |

  The parties' disputes for the five remaining terms, "supporting," "adhesion force,"

12

"cohesion force," "greater than a cohesion force to the user's skin," and "permanently grown to the interior surface," are all premised on the parties' arguments regarding the term "thermoplastic film material." Because the Court has concluded that the claimed "thermoplastic film material" must be a separate component from the claimed "pressure sensitive adhesive layer," the Court understands that most of the disputes regarding these five terms are effectively resolved. Indeed, at the hearing, the parties did not present argument for the construction of any terms besides "thermoplastic film material."

      The Court, however, is not persuaded that Defendants' proposed constructions are necessary or would otherwise be helpful to the fact-finder in considering the asserted claims. For instance, the term "supporting" is a well-known English term. Neither party argues that the term is being used in a manner besides its plain and ordinary meaning in the context of the '081 Patent. On the other hand, the fact-finder might have benefited from an explanation of what the terms "adhesion" and "cohesion" mean. But rather than actually explaining the meaning of the phrase "adhesion force," Defendants just rearrange the words as "the force attributed to the adhesion" and use the construction as a vehicle to state what components disclosed by the claim are being adhered to one another. Similarly, Defendants' proposed construction for "cohesion force" uses the term "cohesion." Particularly because the parties apparently "generally agree" (*see* Docket No. 39 at 13) regarding the construction for "cohesion force" and the claim language itself is clear ("greater than a cohesion force *to the user's skin*"), the Court is again unpersuaded that claim construction for the term is necessary or even helpful.

      The only dispute that might remain is whether the terms "adhesion force," "greater than a cohesion force to a user's skin," and "permanently grown to the interior surface" relate to the relationship between the pressure sensitive adhesive layer and the bra cup, or between the pressure sensitive adhesive layer and the thermoplastic film material. Although the parties' dispute again appears premised on whether or not the pressure sensitive adhesive layer and the thermoplastic film material can be considered a single component, it is not clear that Defendants' proposed constructions necessarily follow simply because the Court has concluded these must be separate components. For instance, the term "adhesion force" appears in Claim 11, which states, "[t]he bra of claim 1 wherein the *pressure sensitive adhesive layer has an adhesion force to the interior surface of the bra cups* that is greater than a cohesion force to the user's skin." '081 Patent, Claim 11 (emphasis added). The "interior surface" is described in Claim 1 as "facing

towards a user's breast . . . wherein substantially the entire interior surface from edge to edge comprises ***a pressure sensitive adhesive layer*** disposed thereon." *Id.* at Claim 1 (emphasis added). Claim 1 further states that there is "a ***thermoplastic film material supporting the pressure sensitive adhesive layer***." *Id.* (emphasis added). Defendant's proposed construction assumes that the entire interior surface of the bra cups includes the thermoplastic film material. But the claim simply requires that the thermoplastic film material support the pressure sensitive adhesive layer, not that it must do so by covering the entire interior surface. Indeed, such an understanding may render Claim 2 redundant. *Id.* at Claim 2 ("The bra of claim 1 wherein the thermoplastic film material defines the interior surface."). Requiring the the thermoplastic film material to cover the entire interior surface would also be inconsistent with disclosure in the specification. '081 Patent at 4:10-14 ("It is understood that the amount of pressure sensitive adhesive covering the interior surface of the bra cups and the amount of the thermoplastic film material forming the interior surface can vary depending on the desired design and function of the bra cups."); *see also id.* at 4:27-42. The Court sees no basis to construe this term by swapping in "thermoplastic film material" for "interior surface" and, in doing so, depart from the plain meaning of Claim 11 and its reference to the relationship between the pressure sensitive adhesive layer and the interior surface of the bra cups. For the same reasons, the Court rejects Defendants' proposed construction for the phrases "greater than a cohesion force to the user's skin" and "permanently grown to the interior surface."

For the reasons stated and others, the Court concludes that no construction is necessary for the claim terms "supporting," "adhesion force," "cohesion force," "greater than a cohesion force to the user's skin," and "permanently grown to the interior surface."

## IV. CONCLUSION

Accordingly, the Court would adopt the following constructions for the disputed claim terms:

| Term | Court's Construction |
|---|---|
| "thermoplastic film material" (Claims 1, 2) | "a plastic or polymer material that is part of the interior surface of the bra cup and is capable of softening or fusing when heated and hardening when cooled" |
| "supporting" (Claim 1) | No construction necessary |

15

| Term | Court's Construction |
|---|---|
| "pressure sensitive adhesive layer" (Claims 1, 11, 12) | No construction necessary |
| "adhesion force" (Claim 11) | No construction necessary |
| "cohesion force" (Claim 11) | No construction necessary |
| "greater than a cohesion force to the user's skin" (Claim 11) | No construction necessary |
| "permanently grown to the interior surface" (Claims 12) | No construction necessary |